# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **LATOYA NICHOLE BAKER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **1:11-cv-3760-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Latoya Nichole Baker ("Petitioner") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, for the reasons elaborated herein, **AFFIRMS** the decision denying benefits to Petitioner.

## I. Procedural History

Petitioner filed an application for Title II disability insurance benefits and

protectively filed for Title XVI Supplemental Security Income ("SSI") on March 5, 2008 and February 11, 2008, respectively, alleging a disability onset date of February 28, 2007, (R. 19), due to learning disability, heart problems, stomach problems, hearing loss, and being born premature, (R. 155).  After the SSA denied her applications on June 4, 2008, (R. 69), Petitioner requested a hearing on August 7, 2008, (R. 74), and received one on March 7, 2011, (R. 100).  At the time of the hearing, Petitioner was 26 years old, had a high school diploma, and performed past work as a fast food worker and janitor, although the ALJ found that this work did not fit the regulatory criteria for "past relevant work" because it fell below the earning threshold.  (R. 28-28).  Petitioner has not engaged in substantial gainful activity since February 28, 2007.  (R. 21).

The ALJ denied Petitioner's claims on March 10, 2011, (R. 16), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 30, 2010, (R. 1).  Petitioner then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, initially, the ALJ determined that the Petitioner's work after the alleged disability onset date did not qualify as substantial *gainful* activity because it fell below the earning threshold.  (R. 21).  Therefore, the ALJ found that Petitioner had not engaged in substantial gainful activity since February 28, 2007, in satisfaction of Step One.  *Id*.  Next, the ALJ acknowledged that Petitioner's severe impairment of borderline intellectual functioning met Step Two, but noted that her physical impairments were only *de minimus*.  *Id*. at 22-23.  The ALJ then proceeded to the next step and found that Petitioner did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. [§§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id*. at 23.

In this regard, the ALJ found also that

> The key term in the introductory paragraph of listing 12.05, so far as it bears on this case, is "deficits in adaptive functioning." The term denotes inability to cope with the challenges of ordinary everyday life. [. . .] Here, the undersigned finds that the claimant's adaptive functioning is largely intact.
>
> . . .
>
> The requirements in paragraph C are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant received IQ scores between 67 and 73 when she was tested with the Wechsler Intelligence Scale for Children at age twelve in 1997. . . and upon testing with the Wechsler Adult Intelligence Scale at age 23 in 2008. However, the claimant does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. [. . .] As described in section three above, the claimant's other medically determinable impairments do not impose more than a minimal limitation upon her ability to perform basic work activities, and as such are considered "non-severe" for purposes of this determination. Since the claimant does not have an additional "severe" impairment, she does not satisfy the requirements of paragraph C.

(R. 24-25) (emphasis added). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Petitioner

> has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitation: simple, unskilled work activities with a Specific Vocational Preparation level of 1 or 2.

(R. 26). In light of Petitioner's RFC, the ALJ held that Petitioner "is capable of

performing past work as a fast food worker and janitor[,] [h]owever, the claimant's past work does not meet the regulatory criteria for 'past relevant work'." *Id*. at 28. The ALJ then moved on to Step Five where he considered Petitioner's age, education, work experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that [Petitioner] can perform." *Id*. at 29.  As a result, the ALJ answered Step Five in the negative, and determined that Petitioner is not disabled.  *Id*.; *see also McDaniel*, 800 F.2d at 1030.  It is this finding, with respect to listing 12.05C, that Petitioner challenges in this action.

## V.  Analysis

Petitioner contends that the ALJ committed reversible error when he "concluded that the plaintiff was functioning intellectually in the borderline range – not mild mental retardation" and that, further, the ALJ failed "to combine the **de minimus** limitations to determine whether, in combination, they rise to the minimal level necessary to satisfy the second prong of ¶12.05(C) of the 'Listing of Impairments'." Doc. 8 at 7, 11.  Petitioner asserts that, as a consequence, "[t]his case should be remanded for proper consideration of the evidence[.]" *Id*. at 7. Based on its review of the record, the court finds that the ALJ's decision that Petitioner does not meet Listing 12.05 is supported by substantial evidence.

A.  The Requirements of Listing 12.05C

Section12.05 defines mental retardation as "significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested" prior to age 22.  20 C.F.R.  Pt. 404, Subpt. P, App.1, § 12.05 (emphasis added).  Additionally, Listing 12.05(C) requires "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 *and* a physical or other mental impairment imposing an additional and *significant* work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P., App. 1 at § 12.05(C) (emphasis added).  As the Eleventh circuit explained, "[g]enerally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.  1992).  It is this failure to present evidence of an additional severe impairment that dooms Petitioner's claim.

B.  Evidence of an Additional *Severe* Impairment

Although the record shows, and the ALJ recognized, (R. 25), that Petitioner

obtained an inclusive IQ score of 67[1] prior to age 22, (R. 225), in satisfaction of prong one of the section C criteria, Petitioner failed to present evidence of another physical or mental impairment that imposes more than a minimal effect on her ability to perform basic work, as prong two requires.[2] In his opinion, the ALJ noted that

> [u]nder 12.00(A), the undersigned assesses the degree of functional limitation the additional impairment impose [sic] to determine if it significantly limits physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment, as defined in 404.1520(c)[3] and

---

[1] Listing 12.00(D)(6)(c) mandates that "where more than one IQ is customarily derived from the test administered, e.g. where verbal, performance, and full scale IQs are provided, in the Weschler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). Therefore, although Petitioner scored a verbal IQ of 69, a performance IQ of 70 and a full scale IQ of 67, (R.225), the score of 67 is the score used for analysis under Listing 12.05(C).

[2] Petitioner asserts incorrectly that "while the ALJ mentions ¶12.05(C) and he mentions mild mental retardation, he concludes that the evidence establishes that the Petitioner is functioning intellectually in the borderline range and that, as a consequence, the cited 'Listing' does not apply." Doc. 8 at 5. The ALJ's opinion does list Petitioner's severe impairment as "borderline intellectual functioning," but plainly states that Petitioner "received IQ scores between 67 and 73" in satisfaction of prong one of Listing 12.05(C). (R.21, 25). The ALJ, instead, concluded that Petitioner did not fit the listing because she "does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function" because "the record does not show that [Petitioner's other physical impairments] have imposed or are expected to impose more than a minimal functional limitation in her ability to perform basic work activities for a continuous period of at least 12 months." *Id*. at 22. Therefore, the court's analysis is focused on whether the ALJ's decision with respect to prong two of Listing 12.05(C) is supported by substantial evidence.

[3] "You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now

416.920(c)[4]. If the additional impairment does not cause such "severe" limitations, the undersigned will not find that the additional impairment imposes "an additional and significant work-related limitation of function. . . . [T]he claimant's other medically determinable impairments do not impose more than a minimal limitation upon her ability to perform basic work activities, and as such are considered "non-severe" for purposes of this determination. Since the claimant does not have an additional "severe" impairment, she does not satisfy the requirements of paragraph C.

(R. 25).

To analyze whether the ALJ's decision is supported by substantial evidence, the court will reviews the medical record to ascertain whether the ALJ properly examined this evidence.[5] In that regard, several years after childhood hospitalizations related to complications from being born premature, Petitioner was hospitalized at Stringfellow Memorial Hospital for about two weeks beginning on November 26, 2001. (R. 347). At the time, Petitioner complained of

---

have a severe impairment." 20 C.F.R. § 404.1520(c).

[4] "You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c).

[5] The ALJ explicitly concluded that Petitioner satisfied prong one of Listing 12.05(C), an inclusive I.Q. score between 60 and 70, see (R. 25), therefore the court's review of the record is limited to medical evidence pertaining to Petitioner's other alleged severe impairments. Additionally, although Petitioner received disability benefits as a child because of medical complications, the court will not review further Petitioner's medical record with respect to her childhood disability because under 20 C.F.R. § 404.1520(c) a past period of disability does not bear on whether a claimant now has a severe impairment. *See id.*

abdominal pain and was admitted for small-bowel obstruction. *Id*. During Petitioner's stay, Dr. Jeffrey Collins and two other surgeons performed three procedures – an exploratory laparotomy with extensive lysis of adhesions and repair of enterotomy, enteroenterostomy resection and right salpingo-oophrectomy – resulting in the removal of her right ovary. *Id*. At follow-up appointments, Dr. Collins and Dr. John Valente noted that Petitioner's "pain is significantly improved" and that they "[did] not think any intervention is necessary at this time." (R.370). Although Petitioner cancelled or failed to show up for her next three follow-up appointments, it appears that she had no further complications until April 22, 2002, when she again saw Dr. Collins for "chronic abdominal pelvic pain." (R. 268). At that time, Dr. Collins discussed the "possibility of referral for chronic pain management" but performed no other tests or procedures. *Id*. When Petitioner returned to Dr. Collins in October of 2002 for an annual gynecological exam, Petitioner complained of chronic pain but refused to follow up with a non-narcotic issuing doctor. (R. 266). Dr. Collins noted that Petitioner's tests were normal, that he referred her to Dr. Kashyap, who also reported no evidence of abnormality, and that Petitioner was seen by Dr. Stokes at a separate facility, but that Petitioner's MRI and total work-up still showed no evidence of acute abnormality explaining any residual abdominal pain. *Id*.

Two years later, Petitioner saw pathologist Dr. W.H. Talbot, Jr. at the Northeast Alabama Regional Medical Center for a complex pelvic mass. (R. 269). Dr. Talbot examined Petitioner to "rule out peritoneum vs ovarian cyst" and ultimately diagnosed Petitioner with hemorrhagic seroma of the right pelvic region. *Id*. The record does not indicate whether Petitioner received any treatment to alleviate the seroma.

In December of 2006, Petitioner was again admitted to Stringfellow Memorial Hospital for a few days after complaining of lower abdominal pain and lack of formed stool. (R. 274). Dr. Valente reviewed Petitioner's symptoms and noted a correlation to Petitioner's menstrual cycle and that the pain lacked any other physical symptoms such as vomiting or nausea. (R. 283). During her admission, Petitioner received an echocardiogram and an ultrasound and CT scan of the pelvis, all of which yielded normal results (R. 291, 302, 307). Moreover, Dr. Valente noted that Petitioner

> refused discharge on the day of previous order and [that a] repeat consultation with Dr. Daniels was offered. [Dr. Daniels] adamantly suggested against further narcotic administration and felt that her chronic pelvic pain would not be benefitted by any surgical intervention. He wanted to start her on other interventions . . . and see her back in the outpatient office. The patient still refused this claiming ongoing nausea, vomiting, diarrhea and pelvic pain. An upper GI and small bowel follow through study was performed *as the nausea vomiting and diarrhea could not be confirmed by the nursing staff*[.] . . . An upper GI and small

> bowel study was performed and showed an *entirely normal upper GI series*. . . . The study therefore confirmed surgical absence of her appendix and a complete lack of any signs of obstruction, partial or otherwise.

(R. 274, 279) (emphasis added). Notably, following this hospital stay, after initially restricting Petitioner from performing normal work activities for nine days, Dr. Valente lifted all of Petitioner's work restrictions on January 11, 2007. (R. 367).

Petitioner presented to the emergency department at Stringfellow Memorial Hospital two more times for chest pain and a migraine. (R. 312, 321). On both occasions, the hospital discharged Petitioner the same evening with pain medication and normal test results. (R. 316, 332). Finally, in February 2008, Dr. Lewis Sellers of Northeast Alabama Regional Medical Center performed a surgery consultation on Petitioner because she continued to complain of abdominal pain. (R. 368). After reviewing Petitioner's x-rays with a radiologist, Dr. Sellers found that "there is no evidence of pulmonary or abdominal significant abnormalities" that warrant surgery. *Id*.

In relation to Petitioner's attempts to obtain disability benefits, the Disability Determination Services referred her to Dr. Beatrice Smith at Anniston Ear Nose & Throat PC for an evaluation. (R. 381). Dr. Smith noted that the

audiogram "shows mild-to-moderate sensorineural hearing loss bilaterally. Speech discrimination scores are excellent. Aided testing is performed with the patient's OtoSonic mini canal aids.  This improves her hearing significantly[.]" *Id*. Moreover, using the Visible Speech Mapping method, Dr.  Smith found that Petitioner was "functioning well with her hearing aids" and that those aids were "appropriate for her loss[.]"  (R. 382).  The court notes also that Petitioner obviously functions well since she did not wear her hearing aids at the hearing before the ALJ and communicated normally by reading lips.  (R. 42).  Finally, while no treating or examining doctor provided statements for the record directly pertaining to Petitioner's physical capabilities, a physical residual functional capacity assessment by Cecile Burton in May of 2008 noted that Petitioner has no exertional limitations and that in a work environment she would need only to avoid concentrated exposure to hazards like heavy machinery or heights.  (R. 386-389).

      In his opinion, the ALJ considered all the medical evidence and Petitioner's childhood hospitalizations before concluding that Petitioner's only severe impairment is borderline mental functioning:

> The claimant's other physical impairments appear to be chronic with periodic exacerbations.  The claimant alleged that she is unable to hold a job because she gets dizzy, weak, lightheaded and throws up blood at work.  However, the medical evidence record does not confirm that the

> claimant experiences these symptoms with any regularity.  In fact, it documents nausea and vomiting on only two occasions since February 2007, and does not support persistent functional limitations attributable to these symptoms.  The claimant testified that she missed three days of work over several months at Popeye's due to these symptoms, which are primarily associated with her menstrual cycles.  She also alleged constant pain due to a cyst on her left ovary, but there is no mention of this in the medical evidence.  In any event, the claimant walks fifteen minutes to work several times a week and continues to work 20 hours a week despite her alleged pain symptoms.  The undersigned finds no basis to conclude that her physical impairments impose more than a *de minimus* limitation, and thus considers them to be non-severe for purposes of this determination.

(R.22).  The ALJ's finding is consistent with the record, which indicates that although Petitioner complained several times of ongoing abdominal or chest pain, her test results routinely yielded normal results.  For example, treating physicians at Stringfellow Memorial Hospital, Drs. Collins and Valente, noted that Petitioner had no abnormalities after several tests and consultations with other doctors.  Dr. Valente even certified Petitioner as able to work with no restrictions after her 2006 hospital stay.  Moreover, while Petitioner complains that symptoms such as nausea and vomiting interfere with her ability to work, she only missed 3 days over a period of several months at her most recent job, and her hospital visits failed to confirm that Petitioner suffered from these symptoms.  Indeed, Petitioner's rejection of Dr. Valente's attempt to refer her to a non-narcotic issuing doctor to help with pain management further belies the purported severity of Petitioner's

pain.  Furthermore, the record lacks any reference to a cyst on Petitioner's left ovary and Petitioner's hearing assessment shows that she functions normally with her hearing aids, which she has successfully used since the fourth grade.

Under the regulations, an impairment, or combination of impairments, is not severe at Step Two of the disability analysis if the evidence indicates that it is only a slight abnormality, or combination of slight abnormalities, and would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521 and 416.921; Social Security Rulings 85-28, 96-3p, and 96-4p.  A failure to demonstrate an additional severe impairment at this step likewise prevents a claimant from satisfying the prong two requirements of Listing 12.05C.  Based on the court's review of the record, the evidence fails to support Petitioner's assertion that her chronic abdominal pain is more than a slight abnormality or that any of her physical impairments would significantly interfere with her ability to work. Given these facts, the court concludes that the ALJ's finding that Petitioner's physical impairments would have no more than a minimal effect on her ability to work, and thus are not severe, is supported by substantial evidence.

## C.  Evidence of Deficits in Adaptive Functioning

At step three in the disability determination, the ALJ also concluded that Petitioner does not have "deficits in adaptive functioning," as required by the

introductory paragraph of Listing 12.05, and therefore does not have an impairment or combination of impairments that meets or medically equals the requirements of Listing 12.05. (R. 23). While Petitioner appears to allege that the ALJ erred in making this determination by failing to consider the combined effect of her impairments, though non-severe, doc. 8 at 9-10, the ALJ properly considered Petitioner's record as a whole, including the combined effects of her impairments. (*See* R. 23-25). Moreover, a determination of whether Petitioner suffers from a deficit in adaptive functioning required the ALJ to consider aspects of Petitioner's everyday life. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV-TR) 42 (4th ed. 2000). The ALJ concluded that Petitioner lacked the required deficit after noting that Petitioner

> live[s] with her mother but is otherwise independent in her daily activities. She provides her own personal care and helps her mother with cooking and household laundry. . . . The claimant has a driver's license, although it took her several attempts to pass the written exam, and she is able to drive to the nearby store. [. . .] She walks to work at Popeye's, where she performs simple tasks like bagging orders and cleaning the restaurant. She testified that she previously worked as a cashier at McDonald's, but she had some difficulty counting change at the register and was transferred to cleaning tasks. The claimant's reported work history discloses other cashier positions with Arby's and Jack's restaurants, although these were short-lived and are considered unsuccessful work attempts. [. . .] She indicated that she carries her paychecks at the bank where she holds a checking account, but her mother manages all household bills. Dr. Davis noted that the claimant

> could read and write and had managed her financial affairs in the past. [. . .] The claimant testified that she has a computer, which she uses to stay in contact with distant family members by email and Facebook's instant messaging function. She reported that she leaves home on the weekends to visit her family and friends and go to the mall[.] . . . Dr. Davis observed that the claimant seemed to have a fairly normal social life, noting that she did not have a lot of friends due to her hearing loss but occasionally goes out and enjoys herself.

(R.24). The ALJ then again noted that Petitioner's physical impairments were not severe and that she did not satisfy the requirements of Listing 12.05(C). Because the ALJ relied on evidence directly from the record, including Petitioner's own testimony at the hearing, the ALJ's finding is supported by substantial evidence.

## D. Rebutting Presumptive Disability Under § 12.05C

Alternatively, even if Petitioner established presumptive disability under Listing 12.05(C), the presumption can be rebutted by evidence of Petitioner's daily life. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). Again, Petitioner is able to function with some degree of normalcy despite her impairments. In fact, Petitioner's intellectual functioning has not prevented her from being able to secure or complete basic tasks at several jobs such as at Popeye's or other fast food restaurants. Moreover, although Petitioner presented at the hospital a few times complaining of abdominal pain, the doctors found no medically determinable abnormalities and could not confirm the nausea and vomiting. Furthermore, despite her ailments and her existing hearing impediment,

Petitioner is able to drive, walk to work, carry on telephone conversations, and perform other common activities with little to no difficulty.  The ALJ properly considered all this evidence and, when the record is reviewed as a whole, this court has no credible basis to find that the ALJ erred in finding that Petitioner does not meet Listing 12.05(C).

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Petitioner is not disabled is supported by substantial evidence, and that the ALJ  applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.

Done the 17th day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE